IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LOUIS PISTOLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:19-CV-1185-MAB |
| | ) | |
| AMEREN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| LOUIS PISTOLIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:19-CV-1182-MAB |
| | ) | |
| VS. | ) | |
| | ) | |
| J.F. ELECTRIC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

Plaintiff Louis Pistolis brought two cases, 19-cv-1182 and 19-cv-1185, against Defendants J.F. Electric and Ameren, respectively, alleging he was discriminated and retaliated against in violation of the Americans with Disabilities Act ("ADA") during his employment as a Line Foreman with J.F. Electric on an Ameren work site (Doc. 2, pp. 1-4; Doc. 2-2). On July 7, 2020, the Court heard oral arguments during a telephonic hearing about a number of motions pending before the Court, including Plaintiff's motions for

counsel (Docs. 13, 14[1]), Plaintiff's motions for consolidation (Docs. 27, 28), Plaintiff's motions for order not to collaborate (Docs. 14, 16), and Defendants' motions to dismiss under 12(b)(6) (Docs. 25, 27).

At the conclusion of the hearing, Plaintiff's motions for counsel (Doc. 13, 14) were **DENIED without prejudice** and Plaintiff's motions for order not to collaborate were **DENIED** at Plaintiff's request (Doc. 14, 16). Defendant J.F. Electric's motion to dismiss was also **DENIED** (Doc. 25). Defendant Ameren's motion to dismiss was taken under advisement (Doc. 27) as were Plaintiff's motions to consolidate (Docs. 27, 28). *See generally* Docs. 40, 41.

After reviewing the record and for the reasons set forth below, Defendant Ameren's motion to dismiss is **DENIED in part and GRANTED in part** (Doc. 27); Plaintiff is granted leave to amend his complaint up until August 11, 2020 in accordance with the instructions at the conclusion of this Order. Accordingly, Plaintiff's motions to consolidate are **GRANTED** (Docs. 27, 28).

### DEFENDANT AMEREN'S MOTION TO DISMISS

In its motion to dismiss, Defendant Ameren argues, generally, that Plaintiff failed to properly allege a qualifying disability under the ADA (Doc. 27, p. 5); failed to properly plead whether he suffered an adverse employment action because of said disability (Doc. 27, p. 5-6); failed to plead that Defendant Ameren was his employer (and, therefore, could

---

[1] The Court will list document numbers for 19-cv-1182-MAB first before 19-cv-1185-MAB throughout this Order.

be sued in tandem with Defendant J.F. Electric) (Doc. 27, p. 2-4); and failed to properly plead retaliation under the ADA (Doc. 27, p. 6-7).

A motion to dismiss under Rule 12(b)(6) addresses the legal sufficiency of the plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately prevail. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts, and draw all possible inferences in the plaintiff's favor. *E.g., Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation omitted). To survive a motion to dismiss, the plaintiff must do more than simply recite the elements of a claim in a conclusory fashion. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Reynolds*, 623 F.3d at 1146 (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Roberts v. City of Chicago*, 817 F.3d 561, 564–65 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). The complaint need not, however, contain "detailed factual allegations." *Reynolds*, 623 F.3d at 1146 (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff here is proceeding *pro se*. The pleading standards for *pro se* plaintiffs are considerably relaxed. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013). *See also Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081

(2007) (even in the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). *See Arnett v. Webster*, 658 F.3d at 751 (7th Cir.2011) (reminding courts to "construe pro se complaints liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers"); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir.2010) (explaining after *Iqbal* that the plaintiff need only "give enough details about the subject-matter of the case to present a story that holds together").

## I.    Qualifying Disability

A plaintiff alleging a violation of the Americans with Disabilities Act must state that he is disabled within the meaning of the Act, is qualified to perform the essential functions of the job either with or without reasonable accommodation, and has suffered an adverse employment action because of his disability. *See Gogos v. AMS Mechanical Systems, Inc.*, 737 F.3d 1170, 1172 (7th Cir.2013). The Seventh Circuit has held that short, plain statements, as long as they include a specific disability, pass the 12(b)(6) test. *See Tate v. SCR Medical Transp.*, 809 F.3d 343 (7th Cir. 2015) (holding that since the plaintiff only alleged a disability and did not say which specific disability, the ADA claims could not survive).[2]

Unlike *Tate*, Plaintiff included multiple pages of facts and exhibits detailing his

---

[2] This standard is also examined by *McElroy v. Advocate Healthcare System Cordell*, 2018 WL 5016825 (N.D. Ill. 2018). The court observed that Tate's "only seriously deficient allegation concerns the disability, which is not named or otherwise identified in the complaint." *Id.*, at 345. A plaintiff asserting an ADA claim must allege her specific disability. *Id.* "The defendant in a disability discrimination suit does not have fair notice when the plaintiff fails to identify his disability." *Id.*, at 346.

Post-Traumatic Stress Disorder ("PTSD") diagnosis and alleging he was discriminated against for his PTSD diagnosis. Plaintiff describes that he is a veteran who has been diagnosed with PTSD that manifests, at times, in his blood pressure rising and depressive thoughts (Doc. 2). Plaintiff also details that he seeks professional medical help at the Veterans Affairs Hospital ("VA") for his PTSD diagnosis (Doc. 2, p. 8). For purposes of a 12(b)(6) motion, Plaintiff has pleaded sufficient facts that he has a qualifying disability under the ADA.

## II.     Adverse Employment Action

Under the ADA, an adverse employment action must be "materially" adverse to be actionable, which means that it has to be "more than a 'mere inconvenience or an alteration of job responsibilities'." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001)(quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Some examples of an adverse employment action could be a decrease in wages or salary, loss of benefits, a demotion, significantly diminished material responsibilities, and termination. *Kersting,* 250 F.3d at 1115 (citing *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 612 (7th Cir. 2001)).

Plaintiff details he was involved in a safety incident that occurred on a construction job site that led to a long disciplinary process where he met and communicated with both J.F. Electric and Ameren officials. Soon after this incident on the job site, Plaintiff was told by a J.F. Electric supervisor that Ameren ordered Plaintiff to leave the job site (Doc. 2, p. 5-6). Plaintiff describes being reassigned to undesirable job sites where he performed "odd jobs" during the discipline process while J.F. Electric and

Ameren officials met to discuss the incident without Plaintiff present (Doc. 2, p. 6-7). Plaintiff also details that throughout this time, Defendants J.F. Electric and Ameren employees repeatedly referred to Plaintiff as "crazy" and "coo coo" (Doc. 2, p. 7-8). Plaintiff describes that the usual punishment for a safety incident of the type he was accused of is three days without work (Doc. 2, p. 6). Towards the end of the discipline process, J.F. Electric offered Plaintiff another placement at a job site operated by Alton Steel, which he happily accepted since he describes that work as "what [he has] been doing for J.F. Electric for the past 5 years" (Doc. 2, p. 8). The same day, though, Plaintiff was terminated from J.F. Electric and not allowed to start the work with Alton Steel. *Id.*

Soon after his termination, on or around December 3, 2018, Plaintiff met with Ameren officials, who asked him, "where [his] head was at," which he believes refers to his PTSD diagnosis. At the conclusion of this meeting, the Ameren official told Plaintiff he could return to the Ameren work site, which implies he would have to be rehired by J.F. Electric (Doc. 2, p. 9). Plaintiff alleges facts of a prolonged disciplinary process not typical of the particular alleged work site violation that included multiple meetings, reassignments, and, ultimately, his termination and subsequent attempt by Defendants to re-hire him. For purposes of a 12(b)(6) motion, Plaintiff has pleaded sufficient facts that he suffered an adverse employment action.

### III.  Joint Employer

Defendant Ameren argues that even if Plaintiff has alleged a protected disability, there is no employment relationship between Plaintiff and Defendant Ameren because Plaintiff does not assert facts that Defendant Ameren exercised significant control over

his day-to-day activities, work conditions, and did not have the ability to hire and fire Plaintiff, among other arguments.

The Seventh Circuit outlined the test to determine if two entities are joint employers. An entity other than the direct employer may be considered a "joint employer" if it exerted "significant control" over the employee. *G. Heileman Brewing Co. v. NLRB,* 879 F.2d 1526, 1530 (7th Cir. 1989). To determine what is "significant control," the Court must determine the following: (1) the extent of the [purported] employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations. *Knight v. United Farm Bureau Mut. Ins. Co.,* 950 F.2d 377, 378–79 (7th Cir. 1991); *see also Mitchell v. Dep't of Corr.,* 367 Ill.App.3d 807, 305 Ill. Dec. 788, 856 N.E.2d 593, 598 (2006) (reciting Illinois's similar multi-factor test).

Plaintiff has alleged he was disciplined by both J.F. Electric and Ameren officials; Ameren officials refused to allow him to return to the work site (Doc. 2, p. 5); and both J.F. and Ameren employees supervise Plaintiff on the job site (Doc. 2, p. 5). In addition, Plaintiff included his termination paperwork from J.F. Electric (Doc. 2-6) and detailed a meeting that occurred at Ameren, after his firing from J.F. Electric, where Ameren told him he could return to the Ameren work site, which presumably would have resulted in his re-hiring by J.F. Electric. Lastly, Plaintiff includes recommendation letters from

Ameren employees who describe the close relationship Plaintiff had, while working on Ameren sites, with Ameren supervisors in completing the work and helping to save Ameren extra costs on the job site (Doc. 2-7).

Defendant Ameren points to a number of cases that it argues supports its position that Ameren is not a joint employer for purposes of a 12(b)(6) motion. While these cases are instructive as to the joint-employer standard, they are not fully analogous at this stage of litigation. For example, Defendant Ameren, in both the pleadings and oral argument, relied on *Love v. J.P. Cullen & Sons, Inc.*, 779 F.3d 697 (7th Cir. 2015).[3] In this case, which was before the court of appeals on a motion for summary judgment and *not* a 12(b)(6) motion, the plaintiff brought a Title VII discrimination claim against JP Cullen & Sons, Inc. ("Cullen"), who subcontracted with Eugene Matthews, who then subcontracted with Union Contracting, Inc. ("UCI"), who hired the plaintiff. The Seventh Circuit found there was not an employment relationship between plaintiff and Cullen because Cullen did not supervise, control, and direct plaintiff's work and because Cullen did not have the ability to hire and fire plaintiff. Like our present case, Cullen ordered the plaintiff off a job site; however, the court found there was nothing in the record to indicate that this had a lasting impact on plaintiff's job opportunities through UCI.

---

[3] Defendants mainly relied on two other case in their briefing and oral argument. In *Bluestein*, the main question for the court on plaintiff's appeal from a summary judgment decision was whether the plaintiff was an employee or employer as she was a partner, shareholder, and member of the board of directors at Defendant's organization, which would determine whether she could bring her claims. *See Bluestein v. Central Wisc. Anesthesiology, S.C.*, 769 F.3d 944 (7th Cir. 2014). Defendants also relied on *Whitaker v. Milwaukee County*, which is also instructive for the present matter in that it states the 5-part test highlighted above, but the court in that case was deciding a motion for summary judgment as well. *Whitaker v. Milwaukee Co.*, 772 F.3d 802 (7th Cir. 2014).

In the present matter, Plaintiff has alleged, at this stage, that his relationship with Defendant Ameren is more direct and continuous than the relationship highlighted in *Love*. For purposes of a 12(b)(6) motion, Plaintiff has alleged sufficient facts to survive the motion to dismiss.

## PLAINTIFF'S RETALIATION CLAIM UNDER THE ADA

In addition to asserting a discrimination claim under the ADA against both Defendants, Plaintiff argues that he was retaliated against, it seems, by Defendant J.F. Electric alone. Both Defendants J.F. Electric and Ameren argued in the two motions to dismiss that Plaintiff failed to plead sufficient facts that he engaged in a protected activity and that an adverse employment action was connected to this protected activity.

To plead a viable retaliation claim under the ADA, a plaintiff must show: (1) he engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) a causal connection exists between the adverse employment action and the statutorily protected activity. *Burks v. Wis. DOT,* 464 F.3d 744, 758 (7th Cir. 2006). The protected activity must be specifically identified. *EEOC v. Concentra,* 496 F.3d 773, 781 (7th Cir. 2007).

It is unclear from Plaintiff's complaint whether he brings retaliation claims against both Defendants Ameren and J.F. Electric and, if so, whether those claims are related to his PTSD or a second condition—his wrist injuries. Because of this confusion, Defendant Ameren's motion to dismiss is GRANTED in part regarding Plaintiff's retaliation claims, and Plaintiff is granted leave to file an amended complaint.

Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be

freely given when justice so requires, which is the case here as both of Plaintiff's cases are in the early stages of litigation and Plaintiff is proceeding *pro* se. It is important for Plaintiff to know that the amended complaint will replace his current complaints entirely. Therefore, it *must stand completely on its own*, must not make reference to the original complaint, and must include *all facts*, information, and allegations that he wishes the Court to consider, so that his entire statement of the claims is presented in a single document. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." FED. R. CIV. P. 8(a).

As the Court has already determined that Plaintiff's ADA discrimination claims survive Defendants' motions to dismiss under 12(b)(6), Plaintiff need not clarify those claims. Plaintiff may simply re-allege all of the allegations from his original complaint insofar as they pertain to his discrimination claims. But Plaintiff must also provide more detail regarding his retaliation claims to address the above noted deficiencies. Plaintiff must clarify if he is bringing this retaliation claim against both Defendants J.F. Electric and Ameren and whether it pertains to his PTSD, his wrist injury, or both. Plaintiff should underline the new material in his amended complaint in accordance with Local Rule 15.1 so that the Court and the Defendants can easily see the amended pleadings. *See* SDIL-LR 15.1. Lastly, Plaintiff is reminded that if he is seeking to assert a retaliation claim against both J.F. Electric and Ameren, he must file the amended complaint in both 19-cv-1182 and 19-cv-1185.

## CONCLUSION

For the above-stated reasons, Defendant Ameren's motion to dismiss is **DENIED in part and GRANTED in part**. Plaintiff is granted leave to file an amended complaint on or before August 11, 2020 clarifying his retaliation claims against either or both Defendants. Accordingly, Plaintiff's motions to consolidate are **GRANTED** (Docs. 27, 28). These cases are hereby **CONSOLIDATED** for discovery purposes at this time.

**IT IS SO ORDERED.**

**DATED:** July 9, 2020

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
